GRBEvN, J.
It is admitted to be well settled, as a general rule, that a creditor at large (one who has not in some way acquired a right to have satisfaction out of his debtor’s property, specifically), cannot come into a court of equity to impeach any conveyance made by his debtor on the ground of fraud; and, consequently, that the court of chancery had no jurisdiction in the first of these suits, unless, as it was insisted by the counsel for the appellees in that suit, the rule is liable to exceptions, within one of which this case falls.
The rule is founded upon the principle of the common law, essential to the enjoyment and circulation of property, that every debtor, until his property is specifically bound to the satisfaction of his debt, by his own agreement or by some judicial proceeding, has an absolute right to dispose of it at pleasure, to prefer one creditor to another, or even to waste or destroy it; a power which no tribunal whatever x'has authority to controul or limit. The obligation of a debtor is purely personal, and in no way affects his property or any portion of it; and so long as his person is amesnable to the process of the courts of justice, there are no means of reaching or affecting his property, but through that medium, and after judgment or decree against him personally. At common law, even when his person was withdrawn from the jurisdiction of the courts, so that process could not be served upon him, there were no means of reaching his property, but by outlawry, which forfeited it, and enabled the creditor in that indirect way to charge it. Our statutes have in such cases (those of absent and absconding debtors) allowed a remedy, which affects the property in the first instance: and these statutory exceptions prove the rule; for if, upon the general principles of equitable jurisdiction, a court of equity could in the first instance act upon the debtor’s property, in favour of a creditor at large, these statutory provisions would have been superfluous, since no stronger cases than those provided for by the statutes, could have occurred to justify its interposition.
To this rule no solitary exception can be found, nor can one exist, until the principles of our law are so changed as to au-thorise courts of equity to administer the estates of living debtors, as if they were dead. The supposed exceptions to the rule, suggested in the argument, are susceptible of ready explanation. In Smithier v. Lewis, Vernon does not state that a fi. fa. upon the judgment, had been delivered to the proper officer: it was sufficient to state, that the bill was by a judgment creditor, leaving it to be inferred, from the known general rule, asserted in the very next case reported, that the creditor had proceeded so far upon his judgment at law, as to entitle him under that rule to resort to a court of equity; and in Madd. Chan. 169, this case is referred to, as one in which there had been a return of nulla bona. In cases in which lands are sought to be subjected, it is sufficient, that the creditor has obtained his judgment, without taking out an elegit, or, in case of the death of the *debtor after judgment, without reviving it against his heirs or terre-tenants, as in the case cited from Ambler, of Stileman v. Ashdown; because the judgment binds all the lands of which the defendant was seized at its date, or at any time thereafter, and the capacity to enforce it and overreach all intermediate alienations and incumbrances, gives the creditor a right to satisfaction out of that specific property, in preference to all others whose rights have not attached upon it before the judgment. Nor is the right of a creditor to, resort originally to a court of equity, against his debtor’s property in the hands of his heirs or personal representatives, an exception to the rule: for, in those cases, there is no longer any one personally responsible to the creditor, or any one who has a right to dispose of the property at pleasure. The creditor has a right to satisfaction out of the specific property in the hands of the heir or executor, who is liable only in respect to such property; which, though not strictly a lien, is so far in the nature of one, that the creditor can follow the property into the hands of a fraudulent alienee of the debtor, or of his heir or executor. Of this class was the case of Cham-berlayne v. Temple, which was relied upon as an exception to the rule. There, the defendants were responsible as executors in their own wrong; and the jurisdiction of the court was founded on the right of a creditor to a discovery of assets, which is, universal, and strengthened in that case by the ingredient of fraud.
The circumstance also, that, with us, any execution wfiich may be taken upon a judgment, may be taken on a decree, was relied on as affecting the rule in question. I cannot perceive how that can possibly have such effect, or enlarge the jurisdiction of the court of equity in any respect whatever. It is only substituted as a more simple and direct means of enforcing decrees, than the original remedy by sequestration, which, in effect, bound all the debtor’s property, real and personal, to a greater extent than any common law execution ; the rents and profits of all his lands instead of a moiety, asunder an elegit; the personalty from *'the time of awarding the commission, instead of the time of delivering the process to the officer, as in the case of a fi. fa. ; and it extended to subjects, which cannot be reached by any common law execution, such as the dividends of bank stock. Hyde v. Greenhill, 1 Dick. 106; Burdett v. Rockley, 1 Vern. 58; Hamline v. Lee, and Fawcet v. Fothergill, cited 4 Ves. 747.
*270 Nor is there any thing in the idea suggested, thac, in case of a fraudulent deed, especially a deed of trust, the court can take jurisdiction upon the assumption, that the donees may be considered in equity, as trustees for all the creditors of the donor. If the deed be wholly fraudulent, then such a claim to hold the donee a trustee, would contradict the very foundation of the creditor’s suit, who comes for relief upon the ground that the deed' is as to him utterly void; or if fraudulent and void, in part only, then the holder of the legal estate is in equity a quasi trustee, only as to such creditors as have otherwise acquired a right to satisfaction specifically out of the trust fund.
In the first case, therefore, the court had no jurisdiction as to the question of fraud, nor as to that of debt, taken separately,'nor when considered together, unless the addition of two negatives can make an affirmative; and the bill in that case should have been wholly dismissed. But as Deison has not appealed from that part of it decreeing the debt against him, the decree cannot be reviewed as to that point. It can only be reviewed, as it affects the appellant Tate, by setting aside the deeds or far as it provides for his claim, and giving costs against him.
The decree against Deison, and the proceedings under it, afforded a proper foundation for thé second of these suits, which brought fairly into discussion, the. claims of Biggat & Matthews, Tate and Morgan respectively, to satisfaction out of the trust fund. If the deeds in question were fraudulent and void so far as they purported to secure a debt to Tate (a question to be decided de novo in this cause) and Morgan had the priority over Biggat & Matthews, the ^injunction was properly dissolved. If, on the other hand, Biggat & Matthews were entitled in preference to Morgan, it should have been continued, and the fund secured to answer the final decree of the court. And the case presented this question, Whether a debtor making a fraudulent conveyance of personal property, and afterwards giving a deed of trust upon it to secure a debt to a creditor, who has full notice of the fraudulent deed, and afterwards another creditor recovers a judgment and delivers to the sheriffs a writ of fi. fa. or a ca. sa. which is executed, the creditor claiming under the deed of trust, or that under the judgment, is entitled to the preference? Unless, indeed, this question was anticipated by the circumstance, that in the agreement of the 9th July, as well as in the subsequent deed of trust under which Morgan claims, the alleged fraudulent deed is recited, and referred to as a valid deed; and nothing was assigned and conveyed by the deed of trust, but all Deison’s right, title and interest in and to the propérty conveyed by the fraudulent deed; so that, in truth, the parties contracted only for Deison’s equity of redemption, subject in the first instance to the payment of both the debts secured by the original deed, one of which is alleged to be fictitious: an inference, which is fortified by the circumstance, that in the first agreement Settle treated with Tate as entitled to a preference under the deed, and procured from him a transfer of his right in the surplus of the real property after satisfying the bank debt. And this I think is the true effect of the transaction, and that Morgan is estopped from impeaching the deed on the ground of fraud, even if in a case, where a debtor having made a fraudulent conveyance of personal property, af-terwards gives a deed of trust to a creditor who has notice, professing to convey, not his right only in the property fraudulently conveyed, but the property itself without any reserve, could impeach it for fraud. And without going any farther, I think Biggat & Matthews might be safely declared, on this ground, to have the preference over Morgan, if the original deed was fraudulent as to Tate.
*But supposing it otherwise, the question first stated occurs: for Tate did not relinquish his rights under the original deed, to any portion of the property, except the surplus of the real property after paying the bank debt; and all the real property has been disposed of, and proved insufficient to pay that debt. As to the personal property the case stands, as if Tate had not been party to the agreement of the 9th July.
A fraudulent conveyance binds the parties, and the donor has no right which he can transfer to another by his own act, except in cases provided for by statute. Our statute of frauds, pursuing in effect the provisions of the english statutes of the 13th and 27th Elizabeth, avoids fraudulent conveyances of real and personal property as to creditors, but only of real property as to subsequent purchasers. A subsequent purchaser of personal property, cannot impeach such a conveyance, otherwise than upon principles of the common law; according to which no such conveyance can be a fraud upon a subsequent purchaser with notice.*
Creditors acquiring, in any way, a lien upon their debtor’s property by contract with him, have uniformly been held to be entitled as purchasers, and in no case that I have met with in the english books, as creditors entitled to the benefit of the statute of the 13 Eliz. The seeming exceptions to *this rule, in the case of the assignees of a bankrupt, and the sheriff in case of an insolvent debtor, are not so in reality. They do not claim as *271 purchasers from the bankrupt or insolvent debtor, and so bound, as he was, by his former conveyances, whether fair or fraudulent ; but, as standing' in the shoes of the creditors, and representing their rights; and in case of bankrupts and of insolvent debtors discharged under the statute, the creditors acquire a lien on the debtor’s property, not by force of his assignment, but by operation of law, the legislative provisions in these cases operating as statutory executions. These subjects were fully examined in the case of Shirley v. Long, 6 Rand. 735, and need not be discussed here in detail. If a creditor taking a lien, by contract with his debtor, upon his personal property before fraudulently conveyed, could unite to his character of a purchaser, that also of a creditor entitled to claim under the statute of the 13 Eliz. we should probably find many cases to that effect in the english boobs; but we find none. And the settled rule, that no creditor is entitled to avail himself of that statute, who has not in fact been impeded by the fraudulent conveyance, in his proceeding in a due course of law to procure satisfaction of his debt, seems to negative the proposition. Nor is there any equity as between the creditors in such a case; the preference being due to him who has acquired the advantage by greater diligence in the pursuit of his legal remedies. Nor can the debtor complain, that he has lost the right to prefer one creditor to another by his mere volition, in consequence of his own fraud, although that preference might be incidentally given by confessing a judgment.
The only case conflicting with these views, is that of Bayard v. Hoffman, 4 Johns. Ch. Rep. 450, in which a debtor, having conveyed a quantity of public stock to trustees, for the benefit of his wife and children, afterwards assigned all his effects to trustees for the payment of all his debts, and this with the concurrence of many of his creditors, from whom, however, the existence of the prior conveyance of the *stock was concealed. And chancellor Kent held, that the voluntary conveyance was void under the statute, but assigned no reason for this judgment, except to assimilate an assignment by a debtor, of all his effects for the satisfaction of all his creditors, to the case of the assignees of a bankrupt in England ; the striking difference between which has been before alluded to, and was more fully examined in Shirley v. Long, to which I refer.
Upon the whole, I think the order, in the case of Liggat & Matthews v. Morgan and others, dissolving the injunction should be reversed, and the cause remanded, that it may be further proceeded in, and that the marshal of the court, in whom the rights of Deison vested, by operation of law, upon his surrender of his effects as an insolvent debtor, may be made a party.

The words of the Virginia statute, are: “Every gift, grant or conveyance of lands, tenements, hereditaments, goods or chattels, or of any rent, common or profit out of the same, by writing or otherwise, and every bond, suit, judgment or execution, had or made, and contrived of malice, fraud, or covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties or forfeitures, or to defraud or deceive those who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity out of them, shall be from henceforth deemed and taken (only as against the person or persons, his, her or their heirs, successors, executors, administrators or assigns, and every of them, whose debts, suits, demands, estates, interests, by such guileful and covinous devices and practices, as is aforesaid, shall or might be in any wise disturbed, hindered, delayed or defrauded), to be clearly and utterly void, any pretence, colour, feigned consideration, expressing of use, or any other matter or thing, to the contrary notwithstanding.” — Note in Original Edition. -