SAWYER (CORNIER v.). See Case No. 3,-245.

SAWYER (EARLE v.). See Case No. 4,247.

---

## Case No. 12,399.

### SAWYER v. GILL.

[3 Woodb. & M. 97.][1]

Circuit Court, D. Maine. May Term. 1847.

INJUNCTION—TO STAY EXECUTION AT LAW—WHEN PROPER—SERVICE—UPON ATTORNEY IN ACTION AT LAW.

1. Where a bill in chancery prays an injunction against former proceedings, at law, which have gone to judgment and not execution, a case may be made out to justify a stay of execution. Fraud in getting jurisdiction in this court over the original action, would be such a case.

2. The injunction might be proper, also, against levying the execution on articles improperly attached, when not good against the execution itself.

3. A service of the bill of injunction in such a case, may be good as a substituted service, if made on the attorney of the plaintiff in the action at law.

[Cited in Cortes Co. v. Thannhauser, 9 Fed. 228.]

4. He will be allowed time to communicate with his client. But such a service is not now

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

good in a cross action; though if made, the first action will be continued till the defendant in the cross action voluntarily appears, or authorizes an appearance for him.

This was a bill in equity [by Frederic W. Sawyer against Charles T. Gill], filed November 18th, 1846, with a view to enjoin the defendant against proceeding in another suit to obtain judgment and enforce his attachment of certain goods, seized on mesne process in that action against the firm of Saxton & Huntington. The present plaintiff was assignee of that firm, and in behalf of the creditors, generally, contended that the proceedings in Gill's action were not bona fide, but collusive, in order to retain said goods from being applied under the insolvent system, for the benefit, pro rata, of all the creditors of the firm. Accordingly, he filed this bill, in which it is alleged that the note, on which that suit was brought, was made to run to Saxton & Huntington themselves, or order, and endorsed by them, and prosecuted by the plaintiff, a citizen of New Hampshire, in order to attach those goods and avoid the distribution of them, equally, under the laws of Massachusetts; and that the interest in that note did not belong, honestly, to Gill. The bill asked, also, that the goods might be discharged from the attachment, as well as the injunction issue virtually, against any execution being levied on them; and it desired any other relief proper in the premises. The subpœna, which issued on the bill, was returned non est inventus, and a notice was then served on H. H. Fuller, the counsel for Gill in the action at law, as Gill resided out of the state and had not been found within it. Mr. Fuller appeared in court and filed a written statement, objecting to the validity of the service on him in this case, on the ground, that, though he was counsel in the other suit, neither the same subject matter nor parties existed in the two; nor was he instructed in respect to this case, or bound to take upon himself its defence.

R. F. Fuller and H. H. Fuller, for himself.

F. W. Sawyer, as complainant, for himself.

WOODBURY, Circuit Justice. There is no doubt that the practice in modern times is more extensive than formerly, to make services on attornies of parties in suits, rather than on parties themselves. This is more especially the case in respect to orders and notices. This is convenient to all concerned, because, in conducting the suit, both parties act through their attornies; and after their names are on record, and well known, it is less expensive to transact the business of the suit with them, and saves trouble to the parties, who, if notified in person, would be obliged afterwards to travel and consult with their attornies.

But the principle or hypothesis on which this practice rests, would confine it substantially to the suit where the attorney has appeared, and is presumed to be instructed.

Hence, in that suit, notices to produce papers, take depositions, file pleas, proceed to trial, &c., &c., can, as a general rule, be properly and effectively served on the attorney of record of either party. 1 Tidd, Prac. 443. See our 4th rule in chancery; 1 Browne, 15. So, a rule to show cause may be served on an attorney. Hutcheson v. Johnson, 1 Binn. 59; Wardell v. Eden, 2 Johns. Cas. 121; 4 Johns. Cas. 62; Colem. Cas. 137. So, a rule to enforce the payment of costs. 1 Smith, Ch. Prac. 456; 6 Lewis, 429. The length of time given him to consult with his client, if living out of the state, or when the subject of the notice required a personal resort to him, is matter of sound discretion, and will be modified so as to prevent any evil in any instance, or any surprise from this mode of service. But when courts have gone thus far, on the principles before explained, they can proceed no further in respect to other distinct actions, however guarded as to time given to communicate with one's client. As to those actions, he may not be his attorney, or substitute.

If the service relates to a new and independent action, therefore, in which he has not been especially retained, and is not the attorney on record, it becomes a question of power and authority, and not of convenience, how notice to appear and defend in it shall be given; and a court, no more than an individual, possesses a right to treat him as the attorney, in another disconnected suit. He is not the agent of the party in that separate suit—quoad hoc. Hind, Ch. 91; 1 Smith, Ch. Prac. 111; Hoff. Ch. Prac. 110; 5 Sim. 502. And how can the court make a person the agent of another for a matter which the principal has never confided to that person? 2 Cox, 389; 3 Brown Ch. 386; 1 Schoales & L. 238; 2 Mer. 458.

In Louisiana, a curator is often appointed for absentees, by the court, and he is served. See Civil Code of Law.

By the statutes of many states, where the respondent in an action has his residence out of the state, as here, and property is attached, notice is ordered in the public papers; and if not made in any way personally, the cause, after a certain number of continuances, is allowed to be defaulted, and judgment taken open to review, or new trial, for a certain length of time; and such judgments, without actual notice, usually bind only the property attached. See Sumner v. Marcy [Case No. 13,609]. But I am not aware of any service being declared good by any statutes, if made on another person, merely because the latter had been a special attorney for the party in some other cause.

Proceedings might be continued in chancery, where not provided for by statute, and a personal service ordered by actual notice on the respondent. After that, judgment pro confesso could be rendered if not conflicting with any act of congress, and if no actual appearance is made, somewhat in analogy to the provisions in the statutes as to legal proceedings connected with foreigners, or absentees. But is it necessary to be attempted in that way here? Is this bill a distinct, independent proceeding from the action at law, so that the counsel there ought not to defend here, on a substituted service being made on him? After full inquiry, I think it is not independent. It is true, that, nominally, both the parties are not the same; nor is all the subject matter the same. But, in reality, the parties are in interest identical, and the point now in controversy was involved in the action at law.

The whole of this bill is to elicit matter bearing on the satisfaction of the judgment in the other action, and connected with the attachment in it, as well as the execution of the judgment. Courts, and especially those sitting in equity, must look through forms to the substance, or the heart of transactions. There, Gill was the plaintiff, who is the defendant here; and there, Saxton & Huntington were the defendants, whose assignee, Sawyer, their privy in law and interest, is the plaintiff here. For many purposes, the assignee stands in the shoes of the debtor, as fully as an administrator does of one deceased. He does so, as to all rights of property, and can even go further, when necessary, to protect the other creditors against frauds and other illegal preferences of particular favorite creditors. See cases in Leland v. The Medora [Case No. 8,237]; Osborne v. Moss, 7 Johns. 161; 10 Paige, 218; 4 Johns. Ch. 450. How is it, also, as to the subject matter in controversy? There, it was not merely a note of hand and its recovery; but it was to sustain a suit on it in the circuit court of the United States, by a bona fide owner of it being out of the state so as to be able to attach property on the writ, and hold it and satisfy the judgment on it; when one not so living or so owning it could not thus attach and satisfy his judgment, provided the debtor before such satisfaction became insolvent and his property was transferred to an assignee.

It is impossible to shut out of sight that this mode of securing and satisfying the note, and not the mere indebtedness on it, was the real matter in contest. When Gill became insolvent, as was anticipated, his other creditors and his assignee were interested to defeat this object, and to have the goods discharged, as required by the Massachusetts insolvent system, and administered on equally, under her insolvent laws, for the benefit of all. This bill was, therefore, instituted, and judgment and execution in that suit delayed, in order to test this very point—a point vital to the limited jurisdiction of this court —a point indissolubly interwoven in those proceedings as well as these, and the only one really to be contested, either there or here. Merely changing the mode of trying it from some appropriate motion there, to a bill here; and staying the judgment and execution there, till this bill is acted on, cannot

alter the essence—one and indivisible—of the controversy. This bill is in the nature of a prohibition to those proceedings. The counsel there, too, was probably instructed in all which he will need consultation on here. This proceeding, as a mere incident to the other, he would naturally conduct as well as the other, as well as he would conduct a motion connected with the other, on a proceeding for contempt in the other, or a subsequent writ of error issuing on the other. They are connected parts of one whole.

It is in this view, that in a suit as to land, —if in the meantime an injunction is brought to stay waste on that land,—Justice Washington thought the service might properly be on the attorney on record. Conk. Prac. 90; Hitner v. Suckley [Case No. 6,543]. See, also, Anon., 1 P. Wms. 523. But the injunction must relate to the suit, or the subject matter of it, and not to a distinct question. If they are not connected parts of one whole, but are, virtually, cross suits between parties in relation to a controversy between the same parties, one of them, by quitting the country, or residing abroad, is not allowed to evade responsibility. Conk. Prac. 90. But the proper mode of service in such case has been controverted. The writ might be well served on his attorney, in the first action, according to early decisions. Mason v. Gardiner, 4 Brown, Ch. 478. The authority of that case, however, is doubted in Waterton v. Croft, 5 Sim. 507, though the practice was in that form and deemed good till 1775. 5 Sim. 505. So in Bond v. Duke of Newcastle, 3 Brown, Ch. 386, and Anderson v. Lewis, Id. 429, and 1 Schoales & L. 238, and Read v. Consequa [Case No. 11,606]; Sims v. Lyle [Id. 12,892]; Ward v. Seabry [Id. 17,161]. So Eden, Inj. 53.

It seems that since 1755, instead of a substituted service on the attorney in case of a cross cause, it is thought better that the proceedings in the first suit should be stayed till the party residing abroad appears and defends the second action. This reaches the same result in a different way; as in the other form the attorney would not be required to proceed, or the respondent would not be in contempt till the attorney enjoyed a reasonable time to communicate with his client. That could be done here, two or three times a day—at Nashua, the first town in New Hampshire—where Gill resides. So a reasonable time to decide whether to defend the bill or not, would be given, and after appearing —should he do so—time to file answers to the interrogatories and charges made in the bill. But a service of a bill for an injunction on the attorney of a party in the suit at law, is still held to be good; it being not so much a cross suit, as an appurtenant or proceeding connected with the suit. 2 Madd. Ch. Prac. 198; Eden, Inj. 53; [Dunn v. Clarke] 8 Pet. [33 U. S.] 1; Delancy v. Wallis, 3 Brown, Ch.

12; and Anderson v. Lewis, Id. 429, and note 2; French v. Roe, 13 Ves. 593; and Kenworthy v. Accunor, 3 Madd. 550. But there must be, if required, an affidavit of the truth of the equity claimed in the bill. Brown, Ch. 12, 24, and note. This is to prevent bills for mere delay. Eden, Inj. 53. In bills for injunctions it seems well settled to be the duty of the attorney of the plaintiff on the record in the suit at law, to inform him of this notice, and if, after such notice, he does not answer in due time, I see no reason why judgment pro confesso should not be entered against him on the bill. [Dunn v. Clarke] 8 Pet. [33 U. S.] 1.

One argument against considering the contest here the same in substance as in the action at law, deserves a moment's attention. It is that the decree here would not be, in such a case, to suspend or prevent the judgment there forever. That it might not be so is true. But the judgment there was not the sole controverted point. It was rather the true interest in the note, whether being in Gill or not, and whether the right in him to sue in this court and attach goods and hold them so as to be levied on by an execution on that judgment, existed or not. Now the decree here, if against Gill, in the end would probably be to restrain him, not from an execution, but from levying the execution on those particular goods, on the ground that he has been guilty of fraud and has no bona fide right to sue and attach here to the injury of other creditors in Massachusetts. In this last view the question relates more to jurisdiction than the amount of the debt. Whether the whole judgment ought not also to be enjoined against, as obtained here, where rightfully no jurisdiction existed, there having been only a fraudulent assignment or sale to a citizen of another state, is a question open to be settled, when reached, and on which the disclosure in answer to this bill, will, when made, probably fling some light. Though the debt, secured by the note, may be owing and may properly be proved against the insolvent's estate, yet it by no means follows that a judgment on it in this court should be rendered, where its jurisdiction over the note is limited, and it has by fraud, or for sinister purposes, been sued in this court. where the party on the truth of the case had no legal right to sue. An injunction may issue to stay an execution no less than a trial or judgment. 3 Brown, Ch. 24. Fraud is one ground for an injunction to stay proceedings at law (Eden, Inj. 19); and fraud is here alleged, and the injunction, when proper, may go to a part or all of the proceedings, as may be found necessary to defeat the fraud; or it may go only against a levy of the execution on the particular goods improperly attached. The service on the attorney in this case. is, therefore, under the circumstances, considered sufficient.