NEHEMIAH O. PILLSBURY, assignee of John C. Doremus,

v.

JAMES KINGON.

1. An assignee under a voluntary assignment made by a debtor for the benefit of his creditors, cannot maintain an action to impeach transfers made by his assignor in fraud of creditors.

2. But where the transfer is a fraud upon the assignor, so that he might attack it, his assignee may avoid it.

On demurrer.

*Mr. F. Adams*, for complainant.

*Mr. J. H. Ackerman*, for demurrant.

THE VICE-CHANCELLOR.

The demurrer in this case disputes the right or capacity of the complainant to maintain this suit. He is an assignee under the act regulating assignments by debtors for the benefit of their creditors, and, as such, seeks to invalidate a deed made by his assignor, just prior to the assignment, on the ground that the deed was made for the purpose of defrauding creditors. The bill exhibits a strong case of actual fraud, and, if the complainant has a right to avoid the acts of his assignor, there can be no doubt about his right to relief on the case made by the bill. The demurrer presents other objections to the complainant's right to recover than his incompetency to sue, but, in my judgment, they do not possess even the merit of plausibility.

The important question is, Whom does the assignee under a voluntary assignment represent—simply the assignor? or, does he also stand in the right of his creditors, and represent both? If he represents only the assignor, it is clear he cannot be heard to impeach his assignor's acts, for no man can invest another with a power he does not himself pos-

sess (the creature can never be greater than his creator), and no man can be permitted to found a claim on his own iniquity; *nemo ex proprio dolo consequitur actionem.* A fraudulent conveyance is good against the parties and their representatives. A fraudulent vendee may even recover the subject of the transfer from the administrator or executor of the fraudulent vendor. *Hawes* v. *Leader, Cro. Jac. 270; Osborne* v. *Moss, 7 Johns. 163, 1 Am. Lead. Cas. 43.* The power to make an assignment for the benefit of creditors is not derived from any statutory enactment. Every debtor, whether solvent or insolvent, possesses, independent of statutory grant, the right to make any disposition of his property which does not interfere with the rights of others; in other words, to make any honest disposition of his property that he pleases. The right of assignment is clearly within the absolute dominion which the law empowers every man to exercise over his own. Our statute does not confer the right, but was made to regulate its exercise. The debtor in this case, in making an assignment, simply exercised a common law right; but he was bound to exercise it subject to the restrictions and limitations imposed by the statute for the accomplishment of certain wise and just purposes. But it was his voluntary act, and not the act of the law. It was an act to which he could not legally be coerced.

Undoubtedly, where a person holding a representative position, comes to title, not under the debtor, but by right paramount to any he possesses, so that his investiture is the act of the law, as is the case with an assignee in bankruptcy, or under the insolvent law, and receivers of a certain class, he is something entirely different from an instrument or appointee created simply by the voluntary act of a debtor. He is the creation of the law for the protection of creditors, and may, therefore, very properly exercise their powers and attributes. *1 Am. Lead. Cas. 42; Miller* v. *Mackenzie, 2 Stew. 291.*

This question has been the subject of considerable diversity of opinion. Justice Potts, in *Garretson* v. *Brown, 2*

Pillsbury v. Kingon.

*Dutch. 438*, stated, that an assignee under a voluntary assignment, not only had the power to avoid a fraudulent disposition previously made by his assignor, but, if he neglected his duty in this respect, creditors could compel him to perform it. This remark was not pertinent to any issue brought under judgment in that case, and was probably uttered without much examination of the authorities, possibly without any.

Chancellor Zabriskie, in *Van Keuren v. McLaughlin, 6 C. E. Gr. 163*, gave expression to the opposite view. He held that a conveyance of real estate, made in fraud of creditors, prior to the date of the assignment, though void against them, is valid against the assignee. He rests his judgment distinctly upon the ground that, inasmuch as the assignor cannot found a claim upon his own fraud, he is powerless to confer authority upon any one else to do so.

Chancellor Kent, in *Bayard v. Hoffman, 4 Johns. Ch. 450*, held that an assignee had a right to impeach fraudulent transfers made by his assignor, but, contrary to his usual habit, he did not attempt to attest the correctness of his conclusion by either citing precedents or giving reasons. When the same question was subsequently presented to Chancellor Walworth for solution, he said: " It is a general rule of law that a person cannot, by any voluntary act of his own, transfer to another a right which he does not himself possess. And where an insolvent debtor has made ·a fraudulent transfer of his property for the purpose of defrauding his creditors, so that he cannot reclaim it himself, I think he cannot, by an assignment which is wholly voluntary on his part, transfer that right to his assignee for the benefit of preferred creditors, or for the benefit of all his creditors equally." *Brownell v. Curtis, 10 Paige 210*. This ruling was followed in *Storm v. Davenport, 1 Sandf. Ch. 135*. By a statute passed in 1858, the New York legislature expressly invested assignees with this power. *Burr. on Assignments 545*. .

The course of judicial opinion in Pennsylvania has been quite as diversified. *Thompson* v. *Dougherty, 12 Serg. & R. 448,* held that the assignee simply stood in the shoes of his assignor, and was incompetent to undo what his assignor had done, while, in the subsequent cases of *Englebert* v. *Blanjot, 2 Whart. 240,* and *Irwin* v. *Keen, 3 Whart. 347,* the opposite doctrine was laid down, with evident surprise that any other view had ever been expressed from the bench. And then followed *Vandyke* v. *Christ, 7 Watts & Serg. 374,* in which Chief-Justice Gibson—apparently unmindful of the fact that he had drawn up the opinion of the court in the two previous cases—said : " The assignee is the debtor's instrument for distribution, and stands in relation to the property as stood the debtor himself. It has been transferred to him as it would have been transferred to the debtor's right hand, had it pleased him to exercise his common law right. As he stands in no privity to the creditors, he cannot arrogate to himself any of their attributes and rights."

If a debtor of this state, in making an assignment, simply exercises his common law right, and our statute confers upon his assignee no power or rights in addition to those he derives from his assignor, it would seem to be quite plain, both as a matter of reason and principle, that the assignee, being the mere creature of the assignor, can do nothing more than his creator could do. The statute makes no express grant of creditors' rights or powers to him, nor do I think it is possible to read the statute so as to be able to say that such grant exists by necessary implication. By the thirteenth section, it is declared that every assignee shall have as full power and authority to dispose of all estate assigned, as the debtor had at the time of the assignment, and to sue for and recover, in his own name, everything belonging or appertaining to the estate of the debtor, and to do whatsoever the debtor might have lawfully done in the premises (*Rev. p. 39*). The assignee's power of disposition, it will be observed, is limited to that which might

Pillsbury v. Kingon.

have been exercised by the debtor himself; his right of action is restricted to the recovery of the " debtor's estate," such, obviously, as the debtor might himself, but for the assignment, have recovered by suit; and when, as the conclusion of the whole matter, general powers are conferred, they are limited to such as the debtor himself might have *lawfully* exercised.

That part of the statute which defines the rights of creditors who exhibit their claims, and also of those who do not, and likewise prescribes how far the debtor shall be discharged, affords, I think, an important clue to the legislative design.    It is enacted that creditors who exhibit their demands for a dividend, shall be wholly barred from having afterwards any action against the debtor, unless, on the trial, they shall prove fraud in the debtor in making the assignment, or in concealing his estate, whether in possession, held in trust, or otherwise, but creditors who do not exhibit their claims shall not be barred of their right against either the person of the debtor, or *any of his estate not assigned* (*Rev. p. 40*).    Now, it seems to me, if it had been the legislative purpose to invest the assignee with capacity to invalidate the debtor's fraudulent acts, it would not have been thought necessary to reserve the same right to creditors who had exhibited their claims.    Indeed, the existence of such right in their hands would be inconsistent with the main purpose of the statute.    The main design of the statute is to secure equality in distribution.    If the assignee has this right, he holds it for the benefit of all creditors, or, at least, for all who have exhibited their demands. If we say the statute also gives the same right to any creditor who may choose to exercise it, and that each may exercise it for his own exclusive advantage, we engraft upon the statute, in the absence of any expression to warrant it, a meaning plainly in conflict with its fundamental purpose.

But, again, it will be observed, that creditors who do not exhibit their claims, retain their rights against not only the person of the debtor, but against " any of his estate not

assigned." What estate is here referred to ? Certainly not property acquired subsequent to the assignment. If that had been meant, terms much more apt, as words of description, would have readily suggested themselves to the minds of the legislators. Besides, in preserving the rights of creditors against the debtor's person, his subsequently-acquired property was made amenable to the payment of such debts. The estate or property intended to be described, was such, I think, as the debtor could not claim or recover, but such as his creditors might.

But a more decisive consideration must be mentioned. If we adopt the complainant's construction, we are compelled to declare that this statute abrogates an established doctrine of the law, so far, at least, as it applies to a special class of cases. It is a settled legal rule, that a transfer of property, made in fraud of creditors, while void as to them, is good between the parties and their representatives. A solvent debtor may make an assignment. If a surplus remains after the assignor's debts are paid, and the fees and costs of administration are discharged, the assignor is entitled to it. That the surplus shall be paid to him is usually one of the trusts expressed in the deed. If an assignee has the power claimed for him, did the legislature mean that he should exercise it for the benefit of his assignor ? Such a purpose must not be attributed to them except upon very clear evidence. If they did not mean this, how is the assignee's power to be exercised for the benefit of creditors alone, and so that the debtor derives no advantage from it? This case presents a striking example of the difficulties that may result from the adoption of the complainant's construction. It is estimated that $2,700 will be realized from the estate assigned; the debts exhibited to the assignee amount to $4,400; the value of the lands alleged to have been fraudulently conveyed is estimated at $7,000. So that, if the complainant should be successful in his suit, and should realize the full value of the property, he will have in hand a surplus of over $5,000.

Pillsbury v. Kingon.

What would he do with it? By the terms of his trust he is bound to pay it to his assignor, and yet, as between his assignor and his assignor's grantee, his assignor is precluded, by his own turpitude, from asserting any claim to it. These considerations, as well as the precedents cited, render it quite clear, I think, that the complainant cannot, either in virtue of his office, or by force of his title, maintain this suit.

On the argument, *Matlack* v. *James*, *2 Beas. 126*, was cited as tending somewhat to support the complainant's view. The material facts of that case were: two of four partners, just prior to an assignment by the firm, conveyed their interest in certain real estate, standing in the names of the individual members of the firm (but which had been purchased with the funds of the firm, and been used for partnership purposes, and constituted part of its capital), in payment of their individual debts. The grantee took with notice that the land constituted part of the partnership property. Chancellor Green, on a bill by the assignee, adjudged the deed to be void. He does not state the grounds of his judgment, but I think they are apparent. Real estate purchased with partnership funds, and used for partnership purposes, though title be taken in the names of the individual copartners, is, in equity, considered partnership assets, so far, at least, as may be necessary to pay the partnership debts and adjust the equities between the partners. *Baldwin* v. *Johnson*, *Sax. 441* ; *Dyer* v. *Clark*, *5 Metc. 562* ; *Story on Partn.* § *93*. The deed was therefore a fraud on the partnership. It was an attempt, by two of the partners, to divert partnership assets from partnership uses and purposes, and appropriate it to their own use. Upon these facts, it was clearly competent for the assignee, as the representative of the defrauded partners, and in virtue of rights he derived from them, to attack this deed. If no creditor's interest had been involved, he could still have maintained his action. The defrauded copartners had a right to redress against the fraud, and so had their repre-

sentative. The adjudication in the case referred to, stands on a principle entirely aside from that involved in this discussion, and that case cannot be used as a precedent in this.

The demurrer must be sustained, and the complainant's bill dismissed, with costs.