## Case No. 18,084.

WRIGHT v. MERCHANTS' NAT. BANK.

[1 Flip. 568; 2 N. Y. Wkly. Dig. 539; 3 Cent. Law J. 351; 1 Thomp. Nat. Bank Cas. 321; 2 Law & Eq. Rep. 638; 1 Cin. Law Bul. 198; 22 Int. Rev. Rec. 248.] [1]

Circuit Court, W. D. Tennessee. May 19, 1876.

NATIONAL BANK—APPOINTMENT OF RECEIVER.

The general banking law has provisions for winding up banks under the direction of the comptroller of the currency. These are not exclusive, and were not intended to put it out of the power of the courts to appoint receivers upon a judgment-creditor's bill.

Demurrer to bill of judgment creditor. Bill alleged, in substance, that complainant had recovered a judgment for $10,000 against. defendant in the state court; that he was unable to have the same satisfied; that the bank discontinued business, and in contemplation of bankruptcy had transferred and conveyed all its property to one creditor, which was a large stockholder in defendant's corporation; and that this creditor was appropriating all the assets to its own use, etc.; and praying for an injunction and the appointment of a receiver. Demurrer went upon the ground that the comptroller of the currency alone could appoint a receiver.

Mr. Welch, T. W. Brown, and W. Y. C. Humes, for complainant.

W. D. Beard, for defendant.

BROWN, District Judge. The power and duty of a court of equity to appoint a receiver upon the application of a judgment-creditor, is too well established to admit of doubt. Edw. Rec. 396; Hadden v. Spader, 20 Johns. 554; Taylor v. Jones, 2 Atk. 600; Edgell v. Haywood, 3 Atk. 352; Candler v. Pettit, 1 Paige, 168; Weed v. Pierce, 9 Cow. 722; Lewis v. Zouche, 2 Sim. 388; Bloodgood v. Clark, 4 Paige, 574; Ogilvie v. Knox Ins. Co., 22 How. [63 U. S.] 380; Parkhurst v. Kinsman [Case No. 10,760]. There is no allegation in the bill that execution has been issued and returned unsatisfied. but as no demurrer is interposed upon that ground, and as the point was not made upon the argument, I shall notice it no further. Indeed, it was practically conceded that a case for a receiver was made out, unless the power of appointing receivers of national banks was exclusively vested in the comptroller of the currency. Title 62 of the Revised Statutes relating to the organization of banks, provides for the appointment of a receiver by the comptroller of the currency to wind up their affairs, only in the following cases: First, for not keeping good its surplus. Section 5151. Second, for not keeping stock at

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 2 N. Y. Wkly. Dig. 539, and 2 Law & Eq. Rep. 638, contain only partial reports.]

minimum. Section 5141. Third, for not keeping good its reserve. Section 5191. Fourth, for not selecting a place for the redemption of its notes. Section 5195. Fifth, for holding its own stock over six months. Section 5201. Sixth, for non-payment of its circulating notes. Section 5234. Seventh, for improperly certifying a check. Section 5208. Eighth, for failing to pay up capital stock, and to allow the same to become, and to remain, impaired by losses. Section 5205.

If a judgment creditor may not invoke the aid of a court of equity he is powerless to enforce his claim, unless he can persuade the comptroller of currency to interfere in his behalf. Section 5242 provides that a "transfer of notes, bills of exchange, bonds or other evidences of debt owing to any national banking association, or of deposits to its credit, all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor, all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void." No method, however, is provided of winding up a bank guilty of any of the acts mentioned in this section, nor is the power given to the comptroller of currency apparently designed to reach these cases. It is at least doubtful whether he would have power, upon the application made by this bill to interfere and appoint a receiver. That the winding-up provisions of the act were not designed to be exclusive, it seems to me, is fairly to be inferred from section 5241, which provides, that "no association shall be subject to any visitorial powers other than such as are authorized by this title, or are vested in the courts of justice." There is certainly an implication here that the courts may exercise a visitorial power, and as this power is usually if not always exerted through the agency of a receiver, I should regard the language of this section as justifying the appointment of one.

But even if the power had been given to the comptroller of the currency to appoint a receiver in cases like the present, in the absence of restrictive language, it is at least doubtful whether it should be regarded as forestalling the jurisdiction of the courts.

The general rule with regard to the election of remedies is stated in Sedg. St. Const. Law, pp. 93–401: "Where a right originally exists at common law, and a statute is passed giving a new remedy without any negative, express or implied, upon the old common law, the party has his election either to sue at common law or to proceed upon the statute; the statutory remedy is merely cumulative." A clause in a railroad act authorizing the directors to exact a forfeiture of the stock and previous payments, as a penalty for non-payment of installments, does not, before forfeiture has been declared, impair the remedy of the directors to enforce payment by action at common law. Northern R. Co. v. Miller, 10 Barb. 260. These principles have been applied to the winding-up act of English corporations, and have uniformly been held as not exclusive of the ordinary remedies provided by law. Lindl. Partn. 861.

In Jones v. Charlemont, 16 Sim. 271, a bill was filed for the purpose of winding up the affairs of a railway company. The defendant demurred upon the ground that plaintiff's might have obtained their object under the special act of 9 and 10 Vict., to facilitate the dissolution of railway companies, and that that act had ousted the court of its jurisdiction in cases clearly within its operation. The vice-chancellor, however, declined to hear counsel for the complainant, and overruled the demurrer.

The same question again came before the court in the case of Clements v. Bowes, 17 Sim. 167, which was a bill by a shareholder in a company, on behalf of himself and others, praying an account of receipts and payments of defendants on behalf of the company. Defendants were members of a finance committee who were alleged to have exclusive control over the money affairs of the corporation. They demurred on the ground that the legislature having provided a method of winding up and dealing with the affairs of a railway company, the court ought to refuse a party the right of coming in to have the accounts taken. The court observes: "To oust the jurisdiction of a court of chancery in such a case, the legislature should have so declared. It is plain where a court of equity has jurisdiction in such a case, an act of giving further relief does not by that oust the title of the court of equity, without express terms being used to put an end to the jurisdiction which is inherent in the court." Similar views were expressed by the court of chancery in 1853, in the case of Fripp v. Chard Ry. Co., 21 Eng. Law & Eq. 53, which was an application by a mortgagee for the appointment of a receiver. A provision in the act that any mortgagee whose interest was in arrear for twenty-one days might have a receiver appointed, upon application to two justices, was held to oust the jurisdiction of the court to appoint a receiver with the usual powers. Counsel for defendant cited to the court upon the argument the case of Smith v. Manufacturers' Bank [Case No. 13,076], in which Judge Blodgett, of the Northern district of Illinois, held that the bankrupt act was not intended to apply to national banks, and that the provision made by congress for their winding up, when

insolvent, was exclusive. Although the two cases are not exactly analogous, the reasoning of the court in that case undoubtedly applies to the one at bar. Having intimated an opinion upon the argument before this case was cited, that the winding-up provisions were not exclusive, I felt bound on hearing the case, in deference to the views of the learned judge, to withhold my decision until I had made a more careful examination of the law. From correspondence with him I am informed that he has modified, to some extent, the views expressed in that opinion, and that in the subsequent case of Irons v. Manufacturers' Nat. Bank [Case No. 7,068], he appointed a receiver of the same bank upon the application of a judgment-creditor. He there observes: "It would seem that the comptroller only has the right to appoint a receiver upon the existence of the facts which clothe him with that power, and that he rightfully declines to act in this case. I can see nothing in the law itself, nor in the decisions of the courts upon the law, so far as they have gone, to exclude the idea that a corporation created as this is, under an act of congress for certain specified purposes, does not come within the general provision of the law regulating the remedies of creditors the same as any other corporation, except where there are specific provisions to the contrary."

It is not intended in this case to decide whether the court would be authorized to appoint a receiver upon the happening of the contingencies authorizing such appointment by the comptroller of the currency. I am clearly of the opinion, however, that when the act does not provide for the introduction of the comptroller, a judgment-creditor is entitled to the aid of a court of equity. I see nothing in the case of Gibson v. Kennedy, 8 Wall. [75 U. S.] 498, which conflicts with these views. Nothing was decided in that case, except that it is for the comptroller to determine when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether a whole or part, and if a part, how much shall be collected. It is true there are certain dicta in the opinion which, literally construed, would indicate that creditors must, in all cases, seek their remedy through the comptroller in the mode prescribed by statute, but I am satisfied the court did not intend that language to be of universal application, and that it should be limited to the facts of the case before it.

Nor is there any force in the objection that a receiver appointed by this court would be powerless to obtain possession of the surplus of bonds on deposit in Washington, for the redemption of its circulating notes. I cannot assume that the comptroller of the currency would refuse to comply with the order of a court having jurisdiction of the case.

On the whole, I am of the opinion that in the absence of action on the part of the comp-troller of the currency, this court has the power to appoint a receiver upon the application of a judgment-creditor, subject, possibly, to his being superseded by the action of the comptroller.

The demurrer must be overruled.