1823.

EGBERTS
v.
PEMBERTON.

## E. and C. EGBERTS *against* PEMBERTON and others.

It seems, that a judgment creditor is entitled to the aid of this Court, to attach a judgment debt due to his debtor, who has no property, which can be reached by an execution at law; such judgment debt being considered as so much money held in trust.

*June 8th.*    THE bill stated, that the defendant, *P.*, is a merchant in *Albany*, and being indebted to the plaintiffs, on the 8th of *August*, 1822, executed a bond to the plaintiffs, conditioned to pay 1438 dollars and 23 cents, with interest, being the balance then due, with a warrant of attorney to confess judgment; that *judgment* was entered thereon the 9th of *August* last; that a *fi. fa.* was issued, and returned *nulla bona*, except as to 212 dollars and 3 cents; that of that sum the landlord of the defendant, *P.*, claimed 118 dollars for rent, which was paid, leaving only 94 dollars and 3 cents for the plaintiffs; that the defendant, *P.*, has no other property *subject to the execution*, though he has property sufficient to satisfy the plaintiffs, from debts owing to him; that in *January*, 1821, the defendant, *P.*, recovered a judgment against the defendant, *Mitchell*, docketted 3d of *March*, 1821, for 2400 dollars; that *P.*, on the 22d of *May*, 1822, assigned that judgment to the defendant, *Denniston*, for 5 dollars, and admitted there was then due on it 800 dollars; that *D.* took the assignment, as collateral security for the payment of a note for

450 dollars, indorsed by *D.;* that *D.* still holds the judg-

1823.

EGBERTS
v.
PEMBERTON.

ment as assignee, and there is still due on the note 60 dol-lars; that *M.* had notice of the assignment, and admitted that balance to be due; that, in 1818 and 1819, *P.*, *M.*, and one *John Mitchell* were partners in commercial business as grocers, and so continued until *December*, 1820, when they said they had dissolved their partner-ship; and *M.* carried on the business alone, with a large quantity of goods, though he was poor when they began; that *P.* is a secret partner in business with *M.*, and frau-dulently conceals his interest as a partner; that, on the 8th of *December*, 1821, *James M'Clasky* recovered a judg-ment against the defendant, *Hallenback*, for 1310 dollars; and there is now due on it 700 dollars; that this judg-ment is assigned to the defendant, *P.*, who has directed the sheriff (a defendant) to collect it, and has an interest in it to 600 dollars; that the defendant *Sewel* is indebted to *P.* in 60 dollars; that *P.* has numerous other debts owing to him. *Prayer*, that an account be taken of the debts due to the defendant, *P.*, and of his property, debts, and choses in action, and that the plaintiff be paid; that *P.* be directed to deposit his *choses* in action with the register, and be enjoined from collecting any of his said debts; that the defendant, *D.*, be enjoined from assigning the said judgment, and be decreed to hold it in trust for the plaintiff, after his debt is satisfied; that the defendant, *M.*, pay to the register what he owes on the judgment to the defendant, *P.*, and be enjoined from pay-ing any moneys to *P.* There was the like prayer as to the defendants, *H.* and *S.*

*G. V. Denniston*, for the plaintiff, moved for an injunc-tion according to the prayer of the bill.

THE CHANCELLOR allowed the injunction, so far only as to prevent the defendant, *P.*, from collecting and re-

1823.

EGBERTS
v.
PEMBERTON.

ceiving the amount of the judgments which he held against *Mitchell* and *Hallenback*. He said, that the cases of *Bayard* v. *Hoffman*, and of *Spader* v. *Davis*, (4 *Johns. Ch. Rep.* 450. 5 *Johns. Ch. Rep.* 280.) only applied to property held in trust for the debtor, and they did not authorize a general interference with the debts due to the debtor. But where there is a specific judgment debt due to the debtor, and he has no property which can be reached by *fi. fa.* at law, it seems to be within the principle and equity of the cases, that the judgment creditor should be enabled, by the aid of this Court, to attach that debt; and there did not appear to be any great inconvenience in giving assistance to that extent. The judgment creditor has no effectual means at law of coercing the debtor to appropriate property, so circumstanced, to the payment of the debt. The remedy by imprisonment or execution, has lost, in a great degree, its force and effect, by the indulgencies granted to the debtor under the extension of gaol liberties; and we have no bankrupt law, nor any mode of attaching the debts due to the debtor, except in cases arising under the absconding debtor act. To help the judgment creditor, so far as to secure to him the appropriation of a judgment debt due to his debtor, is perfectly reasonable, and leads to no embarrassing investigation of the business and dealings between the debtor and those indebted to him. A judgment debt is a liquidated demand reduced to certainty; and it may, without any very great stretch of presumption, be considered as so much money held in trust.

THE CHANCELLOR, said, that he should, therefore, though with considerable doubt and hesitation, allow the injunction, in respect to the judgment debts due to *Pemberton*, with a disposition to have the question further and more fully discussed, if the defendant, *P.*, should think proper, upon the coming in of his answer, to raise it.

*Injunction granted.*