NOBLE T. GREENE *vs.* SAMUEL D. KEENE *et als.*

A judgment creditor in the absence of fraud, trust, or other ground for equitable relief, and
    when no statute gives equitable jurisdiction, cannot by proceedings in equity subject a
    *chose in action* of his debtor to the payment of his judgment.
Hence, when a judgment debtor owned letters patent and arranged with third parties to do
    business under these letters and to pay to his wife the profits due him under the arrange-
    ment; there being no fraud on the part of these third parties, and the payments to the
    wife being in accordance with a direction given by the judgment debtor, and revocable at
    his pleasure:
*Held*, on demurrer to a bill in equity filed by the judgment creditor for an account of these
    profits and for the application of them to the judgment debt, there being no statute au-
    thorizing the intervention of equity, that the bill could not be sustained.

BILL IN EQUITY for discovery, an account, and the satisfaction
of a judgment out of a debt made payable to a third person.   On
demurrer to the bill.

*March* 1, 1884.   MATTESON, J.   This is a bill by which a
judgment creditor seeks to subject to the payment of his claim a
debt due to his debtor, but made payable by the debtor to his
wife.   The bill, after alleging that, on the 26th of March, 1881,
the respondent Samuel D. Keene was indebted to the complain-
ant by promissory notes and otherwise, the suing out by the com-
plainant, on that day, of a writ against Keene, returnable at the
ensuing June Term of the Court of Common Pleas, and the re-
covery, by the complainant, of a judgment against Keene, for
$3,500 debt and $12.60 costs, at the following September Term of
that court, the issuing of an execution on the judgment, on the
26th of June, 1883, and the return of the same by the officer

charged with its service, *nulla bona*, avers, on information and belief, that since the accruing of the complainant's debt, the respondent Samuel D. Keene has been the owner of letters patent, No. 229,256, for an "Improvement in the Art of Cleaning and Opening Spinners' Staples;" that on, to wit, the 24th of July, 1882, Keene entered into a contract with the respondents Richmond & Co., whereby they were to engage in the business of cleaning cotton waste, under said letters patent, and whereby Keene was to receive, as compensation, one cent per pound for all waste cleaned by the patented process, and, on the 1st of August, 1883, one half of the net profits realized from the business; the same to be paid over to his wife, the respondent Eglantine D. C. Keene. The bill further avers that the provision in the contract for the payment of the one half of the net profits of the business to the wife of Keene was entirely without consideration moving from her, and that the arrangement for such payment was made by Keene for the purpose of hindering, obstructing, and defeating the complainant in the collection of his debt. The bill also avers, on information and belief, that the profits accruing from the business amount to a large sum, but to what sum the complainant is ignorant, and prays for a discovery, an account, for a decree that Richmond & Co. pay to him one half of such profits, or so much thereof as shall be required to satisfy his judgment, for an injunction, and for general relief.

The respondent Samuel D. Keene has demurred to the bill.

It is not claimed that there was any fraud on the part of Richmond & Co. in the making of the contract, but only that Keene's intent in making his half of the profits payable to his wife was fraudulent. This making of the profits payable to her, however, if we correctly construe the contract, as alleged in the bill, did not amount to an assignment of the profits to her; nor did it create a trust by which Richmond & Co. became *bound* to pay them to her. It was merely a direction by Keene for the payment of them to her, revocable by him, before payment, at his pleasure. There was, therefore, no alienation by Keene of his share of the profits, but it remained subject to his disposition and control and liable to attachment, by trustee process, for his debts. It follows, that the intent of Keene in making his half of the profits payable to his

wife, was immaterial, since the making it so payable did not hinder, delay, or obstruct this complainant in the collection of his claim.

This being so, the question arising on the demurrer is, whether the complainant can, by this proceeding, reach the money due Keene under the contract and apply it to the payment of his claim; or, in other words, whether in the absence of fraud, trust, or other ground of equitable jurisdiction, a judgment creditor is entitled to the aid of a court of equity to subject a *chose in action* of his debtor to the payment of the judgment debt.

The right of a judgment creditor to the assistance of equity in reaching those assets of his debtor which are not tangible and which cannot be taken on execution, such as stock, money in the funds, and *choses in action*, has been much discussed, and has given rise to considerable diversity of opinion. The cases in which it has been most frequently considered have been those in which an insolvent debtor has made a voluntary settlement, or conveyance, or other disposition of this species of property, alleged to be in fraud of the rights of creditors. Its discussion, therefore, has been intimately associated with the discussion of the question, whether or not such conveyance or disposition came within the provisions of the statutes against fraudulent conveyances.

The early cases in England, in which the courts exercised the jurisdiction in favor of the creditor, were of this character. *Smither* v. *Lewis*, 1 Vern. 398; *Taylor* v. *Jones*, 2 Atk. 600; *King* v. *Dupine*, 2 Atk. 603, note; *King* v. *Marissal*, 3 Atk. 192; *Edgell* v. *Haywood*, 3 Atk. 352; *Horn* v. *Horn*, Amb. 79; *Partridge* v. *Gopp*, Amb. 596, 598, also 1 Eden, 163, 168. Subsequently, however, even in this class of cases, the jurisdiction was denied. *Dundas* v. *Dutens*, 1 Ves. Jun. 196, 198; 2 Cox, 240; *Caillard* v. *Estwick*, 1 Anstr. 381, 385; *Nantes* v. *Corrock*, 9 Ves. Jun. 188, 189; *Rider* v. *Kidder*, 10 Ves. Jun. 360, 368; *Bank of England* v. *Lunn*, 15 Ves. Jun. 569, 577; *McCarthy* v. *Gould*, 1 B. & Beatty, 387, 389, 390; *Grogan* v. *Cooke*, 2 B. & Beatty, 230, 233; *Grey* v. *Pearkes*, 18 Ves. Jun. 197; *Otley* v. *Lines*, 7 Price, 274, 276, 277; *Cochrane* v. *Chambers*, cited in note to *Horn* v. *Horn*, Amb. 79; *Mathews* v. *Feaver*, 1 Cox, 278, 280. The reasons which led the courts to deny the jurisdiction were, that the statute of Elizabeth

was not intended to enlarge the remedies of creditors, nor to subject to execution any property not already liable thereto; that the kinds of property in question were not liable to execution at law, and equity had no power to grant execution in aid of the infirmity of the law; hence, it would be an idle proceeding to set aside a conveyance, which, when set aside, would leave the property in the name and control of the debtor, where it could not be touched. In *Dundas* v. *Dutens*, 1 Ves. Jun. 196, 199, Lord Thurlow asks, " Is there any case where a man having stock in his own name has been sued for the purpose of having it applied to satisfy creditors ? " And he proceeds, " These things, such as stock, debts, &c., being *choses in action*, are not liable. They could not.be taken on a *levari facias*. . . . If the court was of opinion, . . . that there was any lien upon the stock, by which it was capable of being affected, that might be the foundation of it; but if not, it is quite new to me that this court can touch it. I have never heard of such a thing." In *Grogan* v. *Cooke*, 2 B. & Beatty, 230, 233, Lord Manners, referring to the case of *Dundas* v. *Dutens*, reports Lord Thurlow as having said, " The opinion in *Horn* v. *Horn* is so anomalous and unfounded that forty such opinions would not satisfy me. It would be preposterous and absurd to set aside an agreement, which, if set aside, leaves the stock in the name of a person, where you could not touch it." Again, in *Nantes* v. *Corrock*, 9 Ves. Jun. 188, Lord Eldon says, " In this case the property is only stock, and there is no instance of this court giving execution against stock, *eo nomine*, upon which there is no lien ; " and in *Bank of England* v. *Lunn*, 15 Ves. Jun. 569, 577, he held that stock was not liable to the payment of debts, during the lifetime of the proprietor, in any way, except under a commission in bankruptcy.

In this country, no cases have been more frequently cited in support of the exercise of the jurisdiction than *Bayard* v. *Hoffman*, 4 Johns. Ch. 450, and *Spader* v. *Davis*, 5 Johns. Ch. 280, the latter appearing also by the name of *Hadden* v. *Spader*, 20 Johns. Rep. 554, 562. In the former, Chancellor Kent admitted the plausibility of the reasoning by which the doctrine is maintained, that a voluntary settlement of property, which a creditor could not reach by legal process, in case no settlement had been

made, is not within the statute of Elizabeth, and, therefore, good against creditors, even if made by an insolvent debtor ; but he thought that doctrine too encouraging to fraudulent alienations, since a debtor, under the shelter of it, might convert all his property into stock and settle it upon his family, in defiance of his creditors and to the utter subversion of justice.    For this reason he felt inclined to follow the authority of *Taylor* v. *Jones*, 2 Atk. 600, which he considered the leading case, among the early English cases, in favor of the creditor.    In that suit a bill was filed to have the debts due to the plaintiff paid out of stock·comprised in a voluntary settlement and vested in trustees for the benefit of the defendant for life, of his wife for life, and then for the benefit of his children.    The money, so vested, was a legacy left the husband after marriage.    The master of the rolls, Fortescue, held the settlement fraudulent and void, under the 13 Elizabeth, as to creditors, both before and after the marriage, and decreed the trust estate, the stock, to be sold and applied to the payment of the creditors.    The chancellor did not, however, find it necessary to determine the point in *Bayard* v. *Hoffman*, but decided that case on another ground.

*Spader* v. *Davis* was a case in which an insolvent debtor had made two assignments of his stock of goods, which, if not originally void as made with intent to hinder, delay, and defraud creditors, had become void by reason of the refusal of the creditors to accede to the oppressive terms therein proposed.    The assignee had sold the property, in pursuance of the second assignment, and after the expiration of the time for the acceptance by the creditors of the terms proposed, held the proceeds of the sale, and other moneys assigned to him in like manner, in trust for the debtor, to whom he had paid from time to time various sums.    At the filing of the bill there remained in the hands of the assignee a balance which the chancellor decreed should be paid to the plaintiff's solicitor, with interest and costs, or that execution should issue, &c.    The defendants appealed from this decree, which was affirmed by the Court of Errors.    Justice Woodworth, in giving the opinion of the majority of the court, held that the right of the judgment creditor to the interposition of the court depended on the fact that he had pursued his remedy as far as he could at law.    He says,

*Hadden* v. *Spader*, 20 Johns. Rep. 554, 569, "If I have rightly
understood the former cases, it does not appear to be indispensa-
bly necessary that the property might be taken on execution; but
the broad principle is supported that stock may be reached in
equity where the plaintiff has pursued his remedy as far as he can
at law." He, accordingly, laid down the broad doctrine that a
court of chancery has power to assist a judgment and execution
creditor to discover and reach the property of his debtor, in whose-
soever hands it has been placed, out of reach of an execution at
law, and that it makes no difference whether the property of the
debtor consists of *choses in action*, money, or stock; for the court
can compel the debtor, or his trustee, to pay it over to the cred-
itor, and can direct a transfer and sale of the stock for the benefit
of the creditor.

We think that Justice Woodworth was mistaken in his infer-
ence, that the ground on which the former cases rested the juris-
diction was that the creditor had exhausted his remedy at law.
We are rather inclined to believe that it will be found on exami-
nation that the previous cases in which relief had been granted
contained some element of fraud, or trust, or were bills to reach
equitable interests in property; and that the courts, in giving re-
lief, proceeded only upon the usual grounds of equitable jurisdic-
tion. If this be so, it follows that the doctrine of *Hadden* v.
*Spader*, in so far as it authorizes the interference generally, by a
court of equity, with the debts and other *choses in action* of the
debtor, or, in other words, with the assets of the debtor which are
purely legal, is erroneous.

Justice Platt, who gave a separate opinion, limited the applica-
tion of the doctrine to those cases wherein the trustee received
*goods*, liable in themselves to execution, under circumstances which
imply fraud, in fact or in law, against creditors.

In *Egberts* v. *Pemberton*, 7 Johns. Ch. 208, 299, Chancellor
Kent remarked that the cases of *Bayard* v. *Hoffman* and *Spader*
v. *Davis* only applied to property held in trust for the debtor, and
did not authorize a general interference with the debts due to him.
He then proceeded to give reasons why a judgment debt should
stand on a different footing from other debts, and might, perhaps,
be regarded as property held in trust by the debtor, and he there-

fore, though *with considerable doubt and hesitation*, granted the injunction moved for, so far as it related to the judgment debts due to the defendant, with a disposition to have the point more fully discussed, if the defendant should think proper to raise it by his answer.

Even Chancellor Walworth, who seems to have been inclined to press the jurisdiction to its utmost limits, in pronouncing the opinion of the court, as circuit judge, in *Weed* v. *Peirce*, 9 Cow. 722, 723, says, " It must be admitted, that the reasoning of Judge Woodworth would extend the jurisdiction of courts of equity much beyond what the late chancellor supposed was allowable. . . . I think, with the late chancellor, that in an ordinary case, free from all fraud and injustice, this court ought not, on the application of an execution creditor, to deprive the debtor of the power of collecting his debts. There must, undoubtedly, be an unconscientious exercise of that power on the part of the debtor ; or some fraud, collusion, injustice, or wilful neglect, on his part, to collect and apply his debts and *choses in action* to satisfy his creditors ; or some other ground of equitable jurisdiction in relation to such debts and *choses in action*, to enable execution creditors, by the aid of a court of equity, to reach and apply the same in satisfaction of their judgments and executions."

The question was discussed by Chancellor Sandford in a very carefully considered and ably reasoned opinion, in *Donovan* v. *Finn*, 1 Hopk. Ch. 59, 74. The conclusions there reached were, that the cases of authority in which relief has been given to judgment creditors were in themselves cases of equitable jurisdiction, involving fraud, or trust, or seeking to subject to the satisfaction of a judgment, property in itself liable to execution, by removing a conveyance which operated as a fraudulent impediment to the execution, and that in the absence of fraud, trust, or other ground of equitable jurisdiction, equity has no power to compel the debtor of a judgment debtor to make payment to the judgment creditor, in satisfaction of the judgment. The argument of the chancellor, on which these conclusions were based, is as follows : According to the distribution of jurisdictions, suits for the recovery of ordinary debts are appropriated to the courts of common law ; and the proceedings for enforcing the judgments rendered therein are likewise

allotted to those courts.   Therefore, when the subject of the suit is exclusively of legal cognizance, a court of equity has no jurisdiction to enforce the judgment by its own methods of proceeding, or to give a better remedy than the law provides.   When any fact giving equitable jurisdiction intervenes in the transactions between debtor and creditor, such fact becomes the foundation for relief in a court of equity.   Hence, when a creditor comes into equity for relief, he must come, not merely to obtain judgment, or satisfaction of a judgment, but must present facts which form a case of equitable jurisdiction, as that the debtor has made some fraudulent disposition of his property, or that the case stands infected with some trust, collusion, or injustice, against which it is the province of a court of equity to give relief.   In such cases the court has jurisdiction, not to give a species of execution which the courts of law do not afford, but to give relief in the particular cases allotted to its jurisdiction.   By the existing law, the property of a debtor, consisting of things in action held by him without fraud, is not subject to the effect of any execution issued against his property ; and while a court of law does not reach these by its execution, neither does a court of equity by its execution, for the purpose of satisfying either judgments at law or decrees in equity.   To subject these to the satisfaction of a judgment, by seizing and selling them like goods in possession, would be to alter the established law of the land, and the courts have no power to make such alteration in the name of equity.   The maxims, that every right has a remedy, and that where the law does not give redress equity will afford relief, however just in theory, are subordinate to positive institutions, and cannot be applied either to subvert established rules of law, or to give the courts a jurisdiction hitherto unknown.

The chancellor proceeds to defend the law from the reproach upon it, involved in the assertion that a debtor may convert all his effects into stocks, credits, or other things in action, and may in his own name, or in the name of a friend, hold his property in these forms in defiance of his creditors, and to show that the assertion, though partly true, is, to a much greater extent, erroneous. He then goes on to consider the claim that a failure of justice must take place if such a jurisdiction as that he is contending against be not exercised by some of our courts of justice ; and to show that it

was not the fault of our ancient law that no remedy exists, but is the fault of the legislature. His words are so apt and withal so applicable to the condition of affairs here, that we cannot do better than to quote them. " How, it is asked, is all that class of personal effects, consisting in stocks, credits, and property in action in various forms, a class of property which, in this community, is very great, to be subjected to the payment of debts? That such property should be made subject to the payment of the debts of its owner is not denied. That such property cannot be seized or sold by the sheriff, upon an execution, is the existing law of the State. That, in the present state of our laws, a debtor sometimes holds and enjoys this species of property, while his debts remain unpaid, may be true. These reasons may show that the existing laws are imperfect, and some convenient method of subjecting this class of property to the payment of debts would be a desirable amendment; but they do not show that this court, or any other tribunal, has power to make such an amendment. The argument so strongly urged, that justice requires some new remedy in these cases, is an argument to be addressed to the legislature and not to the courts of either law or equity. Our ancient law was not destitute of a remedy in such cases. That law was intended and adapted to compel the application of all the property of the debtor to the discharge of judgments against him; and for that purpose different kinds of executions were provided. By executions against his property in possession, that species of effects was subjected directly to the discharge of a judgment; but his things in action were reached only by an execution against his person, upon which he was imprisoned until he should satisfy the judgment. The execution against the person was a method of coercion, intended to bring forth, for the satisfaction of the judgment, all such effects of the debtor as could not be subjected to other executions; and it was a powerful remedy. That remedy has been gradually relaxed by the legislature until it has nearly lost its efficacy; and while this great change respecting execution against the person has been made, the rules concerning executions against property have remained without alteration. Thus the imprisonment of the debtor as a remedy has been, in effect, taken away; no effectual method of execution against his property in action has been substituted; and this change in our laws has been made by the legislature itself."

Notwithstanding the criticisms made upon *Donovan* v. *Finn* by Chancellor Walworth, in *Weed* v. *Peirce*, 9 Cow. 722, 723, 724, and by the Assistant Vice Chancellor, in *Storm* v. *Waddell*, 2 Sandf. Ch. 494, 511, we think its reasoning more logical, and its conclusions more consonant with principle and authority, than those of *Hadden* v. *Spader*, and the cases in which the doctrine of the latter has been recognized and approved.

The question has also been considered in several other cases, and the jurisdiction, in the absence of statutory enactments conferring it, has been denied. *McFerran* v. *Jones & Crutcher*, 2 Litt. 220, 222, 233; *Buford* v. *Buford*, 1 Bibb, 305–308; *Doyle* v. *Sleeper*, 1 Dana, 531, 534, 535, 558, 562; *Watkins* v. *Dorset*, 1 Bland, 530, 533, 534, 535; *Shaw* v. *Aveline*, 5 Ind. 380, 384, 385; *Stewart* v. *English*, 6 Ind. 176, 182; *Peoples* v. *Stanley*, 6 Ind. 410, 412; *Williams* v. *Reynolds*, 7 Ind. 622, 625; *Keightly* v. *Walls*, 27 Ind. 384, 386. And compare, also, *Godding* v. *Pierce*, 13 R. I. 532, 533.

In many of the states, statutes have been passed by which a judgment creditor is authorized to seize and sell on execution, or apply for the aid of the courts in equity to reach *choses in action*, stock, property, or money, in the hands of third persons, or voluntary assignees, when the debtor has not property sufficient to satisfy the judgment, which can be reached by execution, and the remedy at law has been exhausted. 2 Kent Comment. 443, note a, page 598, 10th ed. In this State, Pub. Stat. R. I. cap. 207, § 22, cap. 223, §§ 20, 21, 22, provide for the attachment on writs and executions of shares in corporations, and for the sale thereof, in the same manner as other personal property; and Pub. Stat. R. I. cap. 207, § 22, cap. 208, §§ 10, 15, 16, 23, provide for the attachment of the personal estate of a defendant in the hands of his trustee, that term including also his attorney, agent, factor, and debtor, and prescribe the manner in which such personal estate shall be applied to the satisfaction of the final judgment against the defendant, after it has been obtained.

We have no statute extending the jurisdiction in equity to include cases like the present, and we must, therefore, hold that in the absence of fraud, trust, or other ground of equitable relief, a judgment creditor cannot come into equity to subject a *chose in*

*action* of his debtor to the satisfaction of his judgment. As stated by Justice Woodworth, in *Hadden* v. *Spader*, 20 Johns. 554, 562, "The rules and maxims of a court of chancery are as fixed as those which govern inferior jurisdiction. To break in upon these rules because the court may deem it expedient and salutary, would justly excite alarm and be the source of incalculable evils. Every man of intelligence knows too well the value of stability and uniformity in judicial decision to countenance for a moment any indirect attempt, under the semblance of resisting a particular mischief, to invade or encroach on the legislative power."

*Demurrer sustained.*

*John D. Thurston*, for complainant.
*Charles A. Wilson & Thomas A. Jenckes*, for respondent.