In re James R. HOWE, Debtor.

James R. Howe, Appellant,

v.

Andrew S. Richardson, Chapter 7 Trustee and Rhode Island Depositors Economic Protection Corporation, Appellees.

BAP No. RI 98–041.

United States Bankruptcy Appellate Panel of the First Circuit.

March 12, 1999.

George M. Prescott, George M. Prescott, Jr., Law Office of George M. Prescott, Lincoln, RI, on brief for James R. Howe.

Andrew S. Richardson, Boyajian Harrington & Richardson, Providence, RI, on brief for Andrew S. Richardson, Chapter 7 Trustee.

Justin T. Shay, Charles S. Beal, Cameron & Mittleman, LLP, Providence, RI, on brief for Rhode Island Depositors Economic Protection Corporation.

Before GOODMAN, LAMOUTTE, and BOROFF, U.S. Bankruptcy Judges.

BOROFF, Bankruptcy Judge.

Before the Bankruptcy Appellate Panel is the appeal of debtor, James R. Howe ("Howe" or "Debtor"), from a final order, dated May 19, 1998, issued by the United States Bankruptcy Court for the District of Rhode Island. That order sustained the objections of the Chapter 7 trustee and the Rhode Island Depositors' Economic Protection Corporation ("DEPCO") to the Debtor's asserted exemption in three (3) contingent, unliquidated claims against third parties. Specifically, the question before us is whether Rhode Island law provides its bankruptcy debtors with an unlimited exemption for unliquidated and contingent tort or contract-based claims.

The bankruptcy court answered in the negative. After careful review of Howe's challenges to the order, we affirm.

## JURISDICTION

Under 28 U.S.C. § 158, the Bankruptcy Appellate Panel has jurisdiction to hear appeals from final judgments, orders and decrees. 28 U.S.C. § 158(a), 28 U.S.C. § 158(b)(1). Courts of appeals view finality in bankruptcy proceedings as more flexible than in other types of cases. *See England v. Federal Deposit Ins. Corp.,* 975 F.2d 1168, 1171 (5th Cir.1992). Although other issues may remain for resolution in a case after the determination of the Debtor's claimed exemptions, orders granting or denying exemptions are appealable as final orders under 28 U.S.C. § 158. *See id.* at 1172; *In the Matter of Yonikus,* 996 F.2d 866, 868 (7th Cir.1993).

## SCOPE OF REVIEW

The parties do not raise any disputed factual issues for review. Howe's challenge to the decision of the court below is purely legal in nature, and thus we review de novo the bankruptcy court's legal conclusions. *See Bruin Portfolio, LLC v. Leicht (In re Leicht),* 222 B.R. 670, 671 (1st Cir. BAP 1998); *LaRoche v. Amoskeag Bank (In re LaRoche),* 969 F.2d 1299, 1301 (1st Cir.1992).

## BACKGROUND

On November 20, 1997, Howe filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode Island. In his bankruptcy Schedule B, the Debtor listed what he described as three contingent, unliquidated claims,[1] two of which were the subject of pending state court actions. Those assets consisted of (1) a claim with an estimated value of

---

1. The Debtor describes the claims as "contingent" and "unliquidated." They are undoubtedly unliquidated, but we have little or nothing before us to indicate the extent to which the claims are contingent; that is, where liability is dependent on "some future event that may never happen." See Black's Law Dictionary 321 (6th ed.1990). Nevertheless, the extent to which the claims set forth below are contingent is not material to our inquiry.

fifteen thousand dollars ($15,000) for personal injuries allegedly sustained by the Debtor in a motor vehicle accident; (2) claims with an estimated value of six hundred thousand dollars ($600,000) against various third parties for wrongful interference with contract and property interests, breach of contract, breach of fiduciary duty, fraud, misrepresentation, and civil conspiracy; and (3) a claim with a nominal value of ten dollars ($10) for recovery on account of a dishonored check[2] (together the "Choses In Action").

Howe also listed the Choses in Action in his Second Amended Schedule C as fully exempt, and claimed as a basis therefor, Section 9–26–4(10) of the Rhode Island General Laws "and the policy of the law of the State of Rhode Island as expressed by its common and decisional law." Both the Chapter 7 trustee and DEPCO objected to the claimed exemptions, and the Bankruptcy Court sustained those objections. The instant appeal followed.

## DISCUSSION

At issue in this appeal is the relationship, if any, in the state of Rhode Island between the immunity of choses in action from creditor process under common law and the exemption of property from creditor claims. Howe contends that because a debtor's contingent, unliquidated claims against third parties are not subject to attachment and garnishment by creditor process under Rhode Island law, that characteristic constitutes an exemption which is the policy of that state's law and therefore cognizable under 11 U.S.C. § 522(b)(2)(A). The soundness of that argument is the gravamen of our inquiry.

■ A bankruptcy estate includes, with limited exception, all of the interests in property, both equitable and legal, which the debtor held as of the time of the commencement of the case. *See* 11 U.S.C. § 541(a)(1); *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Notwithstanding the breadth of § 541, a debtor may claim certain classes of property as exempt from the estate. 11 U.S.C. § 522. Section 522(b) affords debtors an election between those exemptions provided in § 522(d) or, alternatively, exemptions available under state and federal non-bankruptcy law. *See* 11 U.S.C. § 522(b)(2)(A). Section 522(b)(1) also permits each individual state to "opt out" of the § 522(d) exemption scheme, thereby removing that option for its bankruptcy debtors. 11 U.S.C. § 522(b)(1). Rhode Island is among the minority of states which have not "opted out" of the § 522(d) exemption scheme in favor of their own exemptions, and thus Rhode Island bankruptcy debtors retain the option of selecting either of the alternatives set forth in § 522(b).

Howe selected the exemption scheme available under Rhode Island law. He first argues that property exempt in bankruptcy is synonymous with property not subject to creditor process under state common law, citing *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) and *Smalley v. Laugenour*, 196 U.S. 93, 25 S.Ct. 216, 49 L.Ed. 400 (1905) (property exempt from levy and sale under state law is exempt from the estate). He also points to limitations imposed by the Bankruptcy Code on the powers of a trustee in bankruptcy under 11 U.S.C. § 544(a).[3]

2. As to the dishonored check claim, Howe asserts (and the Chapter 7 trustee does not deny) that although Howe is a party to the suit, he is not entitled to collect on the check.

3. Section 544(a) provides in relevant part
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may

avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a

■ The Debtor's reliance on the foregoing cases is misplaced. They interpreted the Bankruptcy Act of 1898, not the Bankruptcy Code. Under § 541(a)(1) of the Bankruptcy Code, property of the estate includes choses in action, even if contingent and unliquidated and thus not subject to attachment under state law. *See* House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 709 (9th Cir.1986); *In re Tomaiolo,* 205 B.R. 10 (Bankr.D.Mass. 1997). The inclusion of choses in action within the sweep of § 541 represented a significant departure from the more limited composition of the bankruptcy estate under the Bankruptcy Act. Under § 70(a)(5) of the Bankruptcy Act, rights of action were not included in the bankruptcy estate unless subject to "attachment, execution, garnishment, sequestration, or other judicial process." 11 U.S.C. § 110(a)(5) (1898), *superceded by* Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* Section 541 eliminated the requirement that property of a bankruptcy estate be transferable or subject to process by creditor action under state law. *In re Geise,* 992 F.2d 651, 655 (7th Cir.1993); *In re Hunter,* 970 F.2d 299, 302 (7th Cir.1992). The Bankruptcy Code was intended to go beyond the limitations of creditor process law in defining property of the estate. Therefore, under the Bankruptcy Code, a debtor's exemption rights in property can not be based solely on the property's insulation from attachment, levy and sale alone. *In re Geise,* supra; *In re Hunter,* supra.

■ Similarly, Howe's reliance on § 544(a) is without merit. Section 544(a) affords a trustee in bankruptcy the right to avoid various prepetition transfers. That avoidance power has certain limitations. However, the exemption of property under § 522(b) does not constitute a "transfer" for the purposes of § 544(a).

*See In re Whalen–Griffin,* 206 B.R. 277, 288 (Bankr.D.Mass.1997); *In re Robbins,* 187 B.R. 400, 403 (Bankr.D.Mass.1995); *Feinman v. Messia (In re Messia),* 184 B.R. 176, 177 (Bankr.D.Mass.1995). Therefore, the limitations of § 544(a) are not related to a debtor's rights of exemption under § 522.

■ The Debtor next turns to Rhode Island's expressions of policy in its statutory law, and argues that the Choses In Action are exempt under R.I.Gen.Laws § 9–26–4(10) (1997 Reenactment). Section 9–26–4, entitled *Property Exempt from Attachment,* reads in pertinent part as follows: "[t]he following goods and property shall be exempt from attachment on any warrant of distress or on any other writ, original, mesne or judicial ... (10)[s]uch other property, real, personal, or mixed, in possession or actions as is or shall be exempted from attachment and execution, either permanently or temporarily, by general or special acts, charters of incorporation, *or by the policy of the law* " (emphasis added). Howe does not argue that there exist general or special acts of the State of Rhode Island which support his claimed exemption, nor that such an exemption is included in Rhode Island's charter of incorporation. Howe contends only that exemption of the Choses in Action is the "policy of the law" in the State of Rhode Island. Therefore, only if the policy of Rhode Island law supports an exemption from attachment of the Choses In Action is the exemption available.

Nowhere in § 9–26–4, nor elsewhere in the Rhode Island General Laws, is the phrase "policy of the law" defined. Nor have we been able to find any legislative history to assist in understanding what is meant by the term. Consequently, we turn to Rhode Island case law to discern its meaning.

The Rhode Island Supreme Court has considered the scope of earlier codifica-

---

judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a).

**538**

tions of § 9–26–4(10) on two occasions. In *Rhode Island Nat. Bank v. Chase*, 16 R.I. 37, 12 A. 233 (1887), the court was asked to interpret an instrument by which a decedent had assigned, during his life, for the benefit of creditors, all of his property, except "so much thereof ... as [was] by law exempt from attachment." The executor of the decedent's estate claimed that certain insurance policies owned by the decedent had not thereby been assigned to creditors, because they were by their nature exempt from attachment. The court disagreed. Following the case of *In re Keach*, 14 R.I. 571 (1884), the court ruled first that the term "exempt from attachment" excepted only property protected from attachment by Rhode Island's *statutory* exemption and not by common law. *Id.* at 234. The Court then reviewed the statutory predecessor of § 9–26–4(1) [4] and rejected the notion that its exemption of attachment in property exempt by the "policy of the law" was intended to protect all property which by its nature was beyond the reach of attachment. *Id.* "In our opinion the property which is meant to be protected by the exemption referred to is not property which is, from its nature, beyond the reach of attachment, but property which it is a matter of public policy to protect from attachment." *Id.*

The Rhode Island Supreme Court had occasion to review another predecessor to § 9–26–4(10) in *Arch Lumber Co. v. Dohm*, 81 R.I. 69, 74, 98 A.2d 840 (1953). In that case, the court affirmed the determination of a trial court that pursuant to the statute,[5] which also exempted from attachment property exempted by the "policy of the law," it was the policy of the law of Rhode Island to exempt from attachment children's toys, including bicycles, a play pen and a child's desk and chair. *Id* at 843. The Court observed that "the policy of the law favored exempting things of that nature from attachment." However, the

Court noted that the policy of the law might differ when applied to "uncommon and overly expensive things which are sometimes referred to as toys and given to some children as playthings." *Id.* Further definition of the scope of "the policy of the law" was left for another day. That day has not yet arrived.

Neither of the foregoing decisions supports Howe's position, and *Chase* directly contradicts his argument in two respects. First, *Chase* belies the Debtor's argument that in the State of Rhode Island property exemptions exist independent of statutory enactment, based solely on the unavailability of creditor process against that property. Second, both cases dictate that a court look at the identity of the property and not to its legal nature to determine what is subject to the § 9–26–4(10) statutory exemption.

More importantly, nothing in the case law of the State of Rhode Island would lead us to surmise that the character of the Choses In Action would render them *sui generis* exempt as the "policy of the law" of the State of Rhode Island. On the contrary, in *Ellbey v. Cunningham*, 54 R.I. 4, 168 A. 815, 816 (1933), a case in which the Rhode Island Supreme Court held that a judgment debt owed by a third party to a debtor could be garnished by a creditor, the court noted that "[i]t would be an anomaly in our statutory law if, when the sole personal estate of the debtor consisted of judgment debts, such debts should be enforced for the benefit of the debtor and shielded by the law from the just demands of his creditors." *Id.* at 816. Although *Ellbey* is distinguishable from the matter before us because *Ellbey* related to the attachment of a fixed and liquidated claim, we believe that the court's statement reflects a clear policy to apply to the payment of debt as much of a debtor's property as is not necessary for the debtor's

---

**4.** The statute, formerly 1882 R.I.Pub.Laws ch. 209 § 1(14), was identical in text to the present § 9–26–4(10).

**5.** The statute, formerly 1952 R.I.Pub.Laws ch. 3032 § 1(14), was likewise identical in text to the present § 9–26–4(10).

needs. That view is consistent with the court's expressions in *Arch Lumber*, 98 A.2d at 843. We therefore believe that Howe's interpretation of "the policy of the law" falls outside of the remedial purpose of the exemptions as articulated by the Rhode Island Supreme Court.[6]

The Debtor's reliance on the Rhode Island Supreme Court's decision in *Greene v. Keene*, 14 R.I. 388 (1884), is misplaced. In that case, the court held that a judgment creditor could not subject a debtor's chose in action to the payment of the creditor's judgment, in the absence of fraud, because the legislature had provided no mechanism by which execution could be had against a chose in action. However, the Rhode Island legislature subsequently responded by enacting Rhode Island Gen.Laws § 9–28–1,[7] which specifically allows a creditor to reach and apply choses in action which are not otherwise statutorily exempt. Thus, the holding of *Greene* has been abrogated by the Rhode Island Legislature. Choses in action may now be reached by creditors, unless statutorily exempt. And reliance on that exception serves only to lead us back to our original inquiry.

Howe's position is not without support, however. At least two jurisdictions follow the rule which Howe proposes. The Bankruptcy Court for the Eastern District of Missouri held in *In re Mitchell* that contingent, unliquidated claims for personal injuries were not attachable under Missouri law, and thus were exempt from the debtors' estate:

[W]hile there is no explicit statutory exemption in Missouri for unliquidated personal injury claims, any property of the estate which is effectively exempt from attachment and execution under Missouri law may be allowed as an exemption in bankruptcy. According to Missouri's opt out statute a debtor may exempt property of the estate which is "exempt from attachment and execution under the law of the State of Missouri." This statutory language permits Missouri residents to claim exemptions created by statutory and constitutional law as well as common law.

*In re Mitchell*, 73 B.R. 93, 94–95 (Bankr. E.D.Mo.1987) (citations omitted) *aff'd without opinion*, 855 F.2d 859 (8th Cir. 1988). *See also Eanes v. Shepherd*, 33 B.R. 984, 986–987 (W.D.Va.1983) *rev'd without opinion*, 735 F.2d 1354 (4th Cir. 1984).

We could answer by noting that the reasoning in *Mitchell* was criticized in *In re Gaines*, 106 B.R. 1008, 1017–1019 (Bankr.W.D.Mo.1989), *overruled on other grounds*, 121 B.R. 1015 (W.D.Mo.1990), *dismissed without opinion*, 985 F.2d 564 (8th Cir.1991). Or, we could rely on those courts which have variously ruled that immunity from creditor process as a matter of state common law did not, in their opinion, equate with an exemption of the property from creditors. *See In re Geise*, 992 F.2d 651 at 655–56; *In re Leck*, 113 B.R. 500 (Bankr.W.D.Wis.1990); *In re Richards*, 57 B.R. 662 (Bankr.D.Nev.1986); *In re Mills*, 46 B.R. 525, 526 (Bankr.S.D.Fla. 1985). We do neither, as the interpreta-

---

6. Additionally, one treatise on Rhode Island Civil Procedure restricts the meaning of § 9–26–4(10) even further, as being only a reference to exemptions found elsewhere in the General Laws. Ronald J. Resmini, *Civil Practice and Procedure* § 391 (1996). These include specific exemptions for the pensions of police officers and firefighters (§ 9–26–5), pensions of municipal employees (§ 36–10–34), worker's compensation benefits or claims (§ 28–33–27), and other narrowly drawn exemptions. Whether such a constricted reading of § 9–26–4(10) is supported by the case

law is beyond the scope of this inquiry; however, the interpretation put forward does indicate a much narrower reading of the relevant statute than that which Howe advocates.

7. Rhode Island Gen.Laws § 9–28–1, entitled *Creditor's Equitable Action*, provides creditors with an equitable remedy to "reach and apply and subject to the payment and satisfaction of his or her judgment ... any choses in action ... except such as shall be exempt from attachment by virtue of statutory provision."

tion of those courts as to the choices made by the states under their consideration are largely irrelevant to the interpretation before us. Our task is to determine whether the exemption of contingent or unliquidated claims is the "policy of the law" in the state of Rhode Island. The Rhode Island Supreme Court has stated that "where the [statutory] language used is ambiguous, or admits of more than one meaning, it is to be taken in such sense as will conform to the scope of the act and carry out the purpose of the statute." *Berard v. Blais*, 56 R.I. 431, 186 A. 475, 477 (1936). Our reading of the Rhode Island General Laws as exemplified by the decisions of the Rhode Island Supreme Court do not support Howe's position. Howe has asked us to overlook the statements of policy regarding the treatment of debtors' assets made by the Rhode Island Supreme Court in *Chase, Arch Lumber,* and *Ellbey.* We decline. We believe that the statutes cited by Howe do not support the breadth of his interpretation of § 9–26–4(10); and the case law demonstrates, in contrast to Howe's position, a policy which would tend to include, rather than exclude, the choses in action which he seeks to exempt. Consequently, we hold that § 9–26–4(10) does not permit a debtor to exempt property solely because it is by its nature exempt from creditor process at common law. To hold otherwise would be to legislate a new and radically altered state law exemption scheme for the State of Rhode Island, which we have neither the power nor the inclination to do.

## CONCLUSION

For the reasons set forth above, we conclude that the court below properly applied § 9–26–4(10) in denying Howe's claimed exemption.

The Bankruptcy Court's Order is **AFFIRMED.**